1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7   MIGUEL GARCIA,

8                          Plaintiff,          NO. 1:16-CV-3188-TOR

9        v.                                    ORDER GRANTING DEFENDANT'S
                                               MOTION FOR SUMMARY
10  COMMISSIONER OF SOCIAL                     JUDGMENT
    SECURITY,
11
                           Defendant.
12

13

14      BEFORE THE COURT are the parties' cross-motions for summary

15  judgment (ECF Nos. 9; 20).  The Court has reviewed the administrative record and

16  the parties' completed briefing, and is fully informed.  For the reasons discussed

17  below, the Court grants Defendant's motion and denies Plaintiff's motion.

18                              **JURISDICTION**

19      The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g),

20  1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted).

The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§

404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009). If the

analysis proceeds to step five, the burden shifts to the Commissioner to establish

that (1) the claimant is capable of performing other work; and (2) such work

"exists in significant numbers in the national economy." 20 C.F.R. §§

404.1560(c); 416.960(c)(2); *Bray*, 554 F.3d at 1222.

## ALJ'S FINDINGS

Plaintiff filed applications for Supplemental Security Income benefits and

Disability Insurance Benefits in November 2009, alleging a disability onset date of

March 14, 2009. ECF No. 20 at 2. After a hearing, Plaintiff's claims were denied

on February 2, 2012. Tr. 31. Plaintiff appealed to the United States District Court

for the Eastern District of Washington. The District Court remanded the case for

further proceedings, finding that the ALJ did not adequately develop the record,

improperly determined Plaintiff's credibility, and noted the ambiguity of the

evidence concerning Plaintiff's pain behavior. Tr. 1042–60. On remand, an ALJ

held hearings on May 28, 2015 and July 12, 2016, and denied Plaintiff benefits in

an August 25, 2016 decision. Tr. 929–48.

At step one, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since March 14, 2009. Tr. 932. At step two, the ALJ found that

Plaintiff had the following severe impairments: degenerative disc disease of the

spine, depressive disorder, and anxiety disorder. *Id.* At step three, the ALJ found

that Plaintiff did not have an impairment or combination of impairments that meets

or medically equals the severity of one of the listed impairments.  Tr. 933.  The

ALJ then found:

> [T]he claimant has the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the
> following limitations … no stooping, squatting, crouching, crawling
> and kneeling, and no climbing of stairs/ramps or
> ladders/ropes/scaffolds.  The claimant is capable of engaging in
> unskilled, repetitive, routine tasks in two-hour increments.
> Additionally, the claimant is capable of occasional contact with the
> public, coworkers and supervisors.

Tr. 935.  At step four, the ALJ found that Plaintiff is unable to perform any past

relevant work as an order filler, painter, grape harvester, construction worker, and

caregiver.  Tr. 946.  At step five, the ALJ determined that, considering Plaintiff's

age, education, work experience, and residual functional capacity, there are jobs

that exist in significant numbers in the national economy that Plaintiff can perform,

such as marker with approximately 40,000 jobs annually and 2,800 jobs in

Washington State.  Tr. 947.  On that basis, the ALJ concluded that Plaintiff was not

disabled as defined in the Social Security Act.  Tr. 948.

### ISSUES

Plaintiff raises four issues for review:

1. Whether the ALJ properly determined that Plaintiff's disorder was not

   severe at step two.

2. Whether the ALJ properly decided that Plaintiff did not meet the requirements of Listing 1.04.

3. Whether the ALJ properly concluded that Plaintiff was not credible.

4. Whether the ALJ properly weighed the medical evidence.

ECF No. 20 at 13–22. The Court evaluates each contention in turn.

## DISCUSSION

### A. Step Two Analysis

Plaintiff asserts that the ALJ erred in failing to conclude at step two that his pain and somatization disorders are not severe. ECF No. 20 at 13. Plaintiff contends that the error is not harmless because it tainted the ALJ's review of the treating doctors' opinions and the credibility of Plaintiff's symptom testimony. ECF No. 30 at 3. The Commissioner contends that the ALJ's finding was supported by substantial evidence and that any error was harmless. ECF No. 28 at 5, 9.

Plaintiff misconstrues the purpose of step two. A step two finding of severe impairment does not itself result in a finding of disability, it merely screens out groundless claims. *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)). Having passed through the step two window, Plaintiff cannot show he was harmed by the ALJ's step two finding.

While styled as a step two challenge, this argument is better addressed in the fourth issue regarding the proper weight of medical evidence. Plaintiff asserts that the ALJ improperly relied on the conclusions of Dr. Robinson and Dr. Torres-Saenz, rather than the opinions of Dr. Early, Dr. Whitmont, and Dr. Thysell. ECF Nos. 20 at 13; 30 at 2. The Court determines any error in step two is harmless and Plaintiff's claims regarding the proper weight given to various medical opinions will be addressed below.

## B. Listing 1.04 Requirements

At step three of the sequential evaluation process, the ALJ must evaluate the claimant's impairments to determine whether they meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R §§ 404.1520(d), 416.920(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The claimant bears the initial burden of proving that his or her impairments meet or equal a Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). "To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett*, 180 F.3d at 1099 (emphasis in original). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is *not* listed, then to the listed impairment 'most like' the

claimant's impairment." *Id.* (citing 20 C.F.R. § 404.1526) (emphasis in original).

A determination of medical equivalence "must be based on medical evidence only." *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(d)(3)); *see also Bowser v. Comm'r of Soc. Sec.*, 121 Fed. App'x 231, 234 (9th Cir. 2005) ("Step three . . . directs the adjudicator to determine whether, in light of the objective medical evidence, the claimant has a severe impairment or combination of impairments that meets or equals the criteria in the Listing of Impairments[.]"). If a claimant's impairments meet or medically equal a Listing, the claimant is "conclusively presumed to be disabled," and is entitled to an award of benefits. *Yuckert*, 482 U.S. at 141; *see also Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995) ("Claimants are conclusively disabled if their condition either meets or equals a listed impairment.") (citing 20 C.F.R. § 404.1520(d)) (emphasis omitted).

Plaintiff claims that the ALJ incorrectly concluded he did not meet the requirements of Listing 1.04. ECF No. 20 at 14. Part A of Listing 1.04 requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss … accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test." 20 C.F.R. Pt. 404, Subpt. P, Appx 1, § 1.04. Here, the ALJ concluded that there is no evidence that the Plaintiff had nerve root

compromise. Tr. 933. The ALJ pointed to the Plaintiff's neuromuscular examinations, which show no objective evidence of significantly limiting neurologic or motor strength or sensory deficiency. Tr. 934 (citing Exs. 19F, 21F, and 28F).

These examinations illustrate that while Plaintiff has a disorder of the spine, it does not impinge on the nerve roots. As the ALJ noted, most recently, Plaintiff has range of motion, no evidence of root tension, and full motor strength. Tr. 1411 (citing Ex. 28F).

Plaintiff cites numerous examinations, but fails to meet the burden of showing that, in light of the objective evidence, he meets all the requirements of the Listing for a twelve-month period. ECF No. 20 at 15. The ALJ's consideration of Plaintiff's medical records and his specific citations to the examinations outlined above highlight that the ALJ properly considered whether Plaintiff met the requirements of Listing 1.04. Tr. 933–35. The ALJ found that Plaintiff failed to show objective evidence to meet all the requirements of Listing 1.04. *Id.*

Having carefully reviewed the record, the Court concludes that the ALJ's determination that Plaintiff does not meet all the requirements of Listing 1.04 is supported by substantial evidence. The ALJ did not err at step three.

*//*

### C. Plaintiff's Credibility

Plaintiff contends that the ALJ did not provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony. ECF No. 20 at 16. Plaintiff argues the ALJ improperly rejected his testimony based on an unreasonable interpretation of the record regarding the psychological component to his pain, conservative treatment, use of a cane, and daily living activities. *Id.* at 16–21.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [he] gives 'specific, clear and convincing reasons' for the rejection." *Id.* at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th

Cir. 2007)).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

In making such a determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958–59.

Here, the ALJ found that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged pain.  Tr. 936. However, the ALJ did not credit Plaintiff's testimony about the intensity, persistence, and limiting effects of the symptoms, as they are not entirely consistent with medical evidence and other evidence in the record.  *Id.*  Here, there is evidence of malingering and the ALJ provided other specific, clear, and

convincing reasons not to credit Plaintiff's testimony of the limiting effects of his symptoms.

Most importantly, the ALJ found that Plaintiff's alleged level of pain disproportionate to his proven impairments. Tr. 938. In support of this finding, the ALJ recited to the various health providers who observed symptom exaggeration: Drs. Stump and McLaughlin reported Plaintiff's exam was "inconsistent and suggests malingering" (Ex. 2F/7); Dr. Seltzer noted profound symptom magnification (Ex. 21F/8-9), "probable malingering" (Ex. 21F/75); Dr. Robinson assessed marked symptom exaggeration, consistent with malingering or a somatoform disorder" (Ex. 25F/71), and concluded there is "undeniable evidence that his complaints are motivated by secondary gain" (Ex. 25F/72); and Drs. Seltzer and Almaraz indicated "profound symptom magnification" and "probable malingering" (Ex 28F/75).

The ALJ also found that Plaintiff's "imaging and nerve conduction studies, physical examination findings, and treating records do not support the degree of severity alleged." Tr. 936–37. The ALJ noted Plaintiff's back treatment involved primarily conservative care. Tr. 937–38. While the ALJ only cited Plaintiff's conservative course of treatment recommended by Dr. Thysell, using this one example does not negate the other extensive findings regarding Plaintiff's credibility. The ALJ explored MRIs, physical examinations, physician opinions,

1   Plaintiff's use of a cane, and daily activities in finding that Plaintiff's testimony is

2   not credible.  Tr. 935-46.

3          Overall, the ALJ's decision, in addition to citing to evidence of malingering,

4   provided specific, clear, and convincing reasons supported by substantial evidence

5   sufficient for this Court to conclude that the adverse credibility determination was

6   not arbitrary.

7   **D. Weight of Medical Evidence**

8          Plaintiff asserts that the ALJ improperly weighed the medical evidence.

9   ECF No. 20 at 22.  There are three types of physicians: "(1) those who treat the

10  claimant (treating physicians); (2) those who examine but do not treat the claimant

11  (examining physicians); and (3) those who neither examine nor treat the claimant

12  [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

13  *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted).

14  Generally, the opinion of a treating physician carries more weight than the opinion

15  of an examining physician, and the opinion of an examining physician carries more

16  weight than the opinion of a reviewing physician.  *Id.* at 1202.  In addition, the

17  Commissioner's regulations give more weight to opinions supported by reasoned

18  explanations than to opinions that are not, and to the opinions of specialists on

19  matters relating to their area of expertise over the opinions of non-specialists.  *Id.*

20  (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may

reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)

(citing *Lester*, 81 F.3d at 830–31). "If a treating or examining doctor's opinion is

contradicted by another doctor's opinion, an ALJ may only reject it by providing

specific and legitimate reasons that are supported by substantial evidence." *Id.*

(citing *Lester*, 81 F.3d at 830–31). Regardless of the source, an ALJ need not

accept a physician's opinion that is "brief, conclusory, and inadequately supported

by clinical findings." *Bray*, 554 F.3d at 1228 (quotation and citation omitted).

"If there is 'substantial evidence' in the record contradicting the opinion of

the treating physician, the opinion of the treating physician is no longer entitled to

'controlling weight.'" *Orn*, 495 F.3d at 632 (quoting 20 C.F.R. § 404.1527(d)(2)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a

detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings.'" *Garrison v. Colvin,* 759

F.3d 995, 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

**1. Treating Providers: Dr. Hoverman, Dr. Mendoza, Dr. Palmatier, Mr.**
   **Furan, and Mr. Bullock**

The ALJ gave less weight to treating physicians Dr. Hoverman and Dr.

Mendoza regarding their assessment forms completed between 2009 and 2011. Tr.

943.  These physicians found that Plaintiff's overall work capacity was sedentary

or severely limited.  The ALJ explained that while they are treating sources, their

opinions are given little weight because "each consists primarily of rating

checkboxes with a list of claimant's diagnoses and self-reported

symptoms/complaints." Tr. 943.  The forms provided little explanation or

evidence of objective findings to support the limitations.  The ALJ also noted that

the opinions lack corroborating, objective evidence, and there is an absence of

neurological deficits and nerve conduction abnormalities on exams and studies.

Additionally, the findings are inconsistent with independent exams and studies.  *Id.*

The ALJ found the assessments of Dr. Hoverman and Dr. Mendoza contradictory,

so their opinions are no longer entitled to controlling weight.  The ALJ satisfied the

standard for providing substantial evidence to contradict their opinions and the

Court finds that the ALJ did not err in giving less weight to them.

 The ALJ gave some weight to the finding of Plaintiff's capacity for light

duty by Dr. Palmatier in August 2013.  Tr. 943–44.  Dr. Palmatier completed a

physical capacity assessment for Plaintiff's worker's compensation documentation

and found that Plaintiff could perform light duty for the next month with the

limitation of a cane for support and stability.  Plaintiff highlights the importance of

this statement for his use of a cane, but the ALJ gave little weight to the limitation

of a cane as it is inconsistent with the overall record and the examination by Dr.

Curcin. ECF Nos. 20 at 25; Tr. 944. The ALJ properly detailed his findings and did not err in finding them contradictory to the record and objective evidence.

Some weight was given to the opinion of treating provider Mr. Furan, PA-C, in a February 2015 Medical Report. Tr. 944. Mr. Furan found that Plaintiff's back condition was poor, but that work on a regular and continuing basis should not cause his condition to deteriorate and he would likely not miss some work due to his impairments. *Id.* The ALJ noted that the opinion is by a treating provider and is consistent with the overall record, but also highlighted that the opinion is vague as to Plaintiff's specific functional capacities or limitations. *Id.* The ALJ properly gave some weight to Mr. Furan's opinion and his finding of work on a regular basis contradicts Plaintiff's assertion of disability. ECF No. 20 at 25.

The ALJ gave some weight to the March 2012 opinion of physical therapist David Bullock, as it was based on an examination of the Plaintiff with an explanation and documentation of his performance. Tr. 942. Mr. Bullock found that Plaintiff's work capacity was at less than sedentary exertion level. *Id.* Yet, the ALJ determined that this opinion is contradicted because it is not consistent with the record as a whole and lacks objective medical evidence to support the opinion. Additionally, the ALJ emphasized that the opinion is inconsistent with Plaintiff's range of activities. *Id.* The ALJ provided evidence to contradict the

opinion of the physical therapist so that merely giving it some weight was not erroneous.

### 2. L&I: Dr. Curcin, Dr. Seltzer, and Dr. Almaraz

The ALJ gave substantial weight to the opinions of Dr. Curcin's January 2016 opinion, the August 2013 opinion by independent medical examiners Dr. Seltzer and Dr. Almaraz, and Dr. Seltzer's January 2012 opinion. Tr. 941. These independent medical examiners based their opinions on a review of the medical records and objective evidence on exam. *Id.* The doctors found that Plaintiff is capable of full work duties in 2016 and no formal restrictions up to at least a medium category of work in 2013. *Id.*

Plaintiff argues that the ALJ's conclusion of light exertion is arbitrary because it is not consistent with the findings of the doctors for full to medium work duties. ECF No. 20 at 26. Yet, the ALJ stated that when viewing all the evidence in a light most favorable to the claimant, the overall record supports limitations at the light exertional level. Tr. 941. The ALJ asserted that these opinions support the finding that Plaintiff is capable of light work and is not disabled. *Id.*

While examining physicians carry less weight than that of a treating physician, their opinions here are supported by reasoned explanation. *See Holohan*, 246 F.3d at 1202. The ALJ properly detailed and outlined the evidence, including contradicting opinions. He then stated his interpretation and made a

1  finding that Plaintiff is capable of light work.  Therefore, the Court finds that the

2  ALJ properly weighed the evidence of these examining physicians.

3  **3.  Psychological Opinions:  Dr. Early, Dr. Robinson, and Dr. Torres-Saenz**

4      Plaintiff contests that the ALJ did not give enough weight to the assessment

5  by Dr. Early, but gave substantial weight in favor of the opinions of Dr. Robinson

6  and Dr. Torres-Saenz.  ECF No. 20 at 26.

7      The ALJ found that Dr. Torres-Saenz's more recent opinion in February

8  2015 was more consistent with the record as a whole rather than Dr. Early's

9  opinion in December 2012, which found Plaintiff had extreme limitations.  Tr.

10  945–46.  Dr. Torres-Saenz diagnosed Plaintiff with mild depressive disorder and

11  general anxiety, but not somatization or pain disorder.  *Id.*  The ALJ gave

12  significant weight to Dr. Torres-Saenz's findings as it was based on clinical,

13  objective findings and is consistent with Plaintiff's minimal mental health

14  treatment history and demonstrated range of activities.  Tr. 945.

15      The ALJ gave some weight to Dr. Robinson's April 2012 diagnosis of

16  marked symptom exaggeration, consistent with malingering or somatoform

17  disorder.[1]  *Id.*  The ALJ gave significant weight to Dr. Robinson's finding that

18

19  [1]    Plaintiff contends that the ALJ failed to discuss the treating providers Dr.

20  Whitmont and Dr. Thysell who refuted the conclusions of Dr. Robinson.  ECF No.

Plaintiff's psychiatric condition does not interfere with the ability to work.  *Id.*

Overall, the ALJ gave partial weight to Dr. Robinson, as Dr. Torres-Saenz's

assessment is more recent and finds support in the record.  *Id.*

The ALJ detailed the findings of Dr. Early and outlined how his opinion

contradicts the overall record.  The assessment relies largely on Plaintiff's

subjective reports and is not consistent with the overall medical record including

Plaintiff's mental status exam and longitudinal treatment record.  Tr. 945–46.  The

ALJ highlighted that the opinion is inconsistent with the more recent assessment of

Dr. Torres-Saenz, which is more consistent with the record as a whole.  Tr. 946.

Plaintiff contends that Dr. Early conducted a thorough review of the medical

record and administered lengthy objective tests, and so his opinion was not merely

based on subjective reports.  ECF No. 20 at 27.  Dr. Early did review the record,

---

20 at 14.  Yet, the ALJ did discuss the findings of Dr. Thysell and gave some

weight to Dr. Thysell's medical statements in 2011 and 2012 as part of worker's

compensation claims.  Tr. 942.  Dr. Thysell found that Plaintiff was unable to work

pending further evaluation or limited him to modified, sedentary duty.  *Id.*  The

ALJ gave this opinion some weight as he is a primary treating source, but found

that the limitations to less than sedentary level are not consistent with the record as

a whole and lack objective medical evidence.  *Id.*

had the Plaintiff take a true-false psychological test (finding that it was consistent with severe depression and anxiety), and conducted a mental status examination. Tr. 1261-74. While the ALJ found that the assessment of marked-extreme mental limitations relies largely on Plaintiff's subjective reports, he also found that it was not consistent with the overall medical record, more recent opinion of Dr. Torres-Saenz, and Plaintiff's daily reported activities. Tr. 945–46. The ALJ then gave substantial evidence for his finding that Dr. Early's opinion deserves less weight. Findings of depression and anxiety by L&I doctors and Dr. Torres-Saenz was consistent with the ALJ findings of Plaintiff's severe depression and anxiety. *Id.* Plaintiff is incorrect that these findings then support the conclusion that Plaintiff has a pain or somatoform disorder. ECF No. 20 at 27.

The Court determines that the ALJ did not err in giving little weight to Dr. Early's opinion because it is contradicted by the record and the ALJ provided substantial evidence for his finding of Plaintiff's ability to work.

**4. Reviewing Opinions: Dr. Staley and Dr. Thompson**

The ALJ provided substantial weight to the July 2010 review of the record by State agency reviewing medical consultant Dr. Staley. Tr. 944. Dr. Staley found that Plaintiff could perform work at the light exertional level. *Id.* The ALJ emphasized that the RFC assessment falls within the range of exertion found by Dr. Staley. *Id.* The ALJ found that Dr. Staley's opinion is "consistent with the

medical record as a whole, including subsequent evidence after this review, as well as the claimant's demonstrated function/activities." *Id.*

The ALJ determined Dr. Thompson's review of the record between 2010 and 2011deserved some weight. Tr. 943. Dr. Thompson concluded that Plaintiff appeared most likely to be able to do sedentary work. *Id.* He noted the absence of neuro deficits and without evidence of neural impingement, but Plaintiff contends that a month later an MRI demonstrated neural compromise. Tr. 943; ECF No. 20 at 28. In April 2010, an MRI showed a disk protrusion at L4-5, causing probable compromise of the merging L5 nerve roots. Tr. 910. The MRI also found a "[s]mall posterior broad-based central disk protrusion at L5-S1 with no definite compromise of the neural structures." Tr. 911. While there was only probable compromise of a nerve root and no compromise of the neural structures, a second MRI scan on August 2011 found no impingement at all on the nerve roots. Tr. 922. Plaintiff's contention that he should be found disabled because the 2010 MRI showed neural compromise is not compelling given this MRI only showed probable compromise of a nerve root and an MRI a year later did not show any impingement.

This Court concludes that the ALJ did no err in giving different weights to these reviewing physicians based on the record as a whole and subsequent treating records.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 20) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 28) is **GRANTED**.

The District Court Executive is directed to enter this Order and Judgment for the Defendant, furnish copies to counsel, and **CLOSE** the file.

**DATED** September 28, 2017.



THOMAS O. RICE
Chief United States District Judge